# SMITH *v.* STATE.

## (*Knoxville.*  October 13, 1891.)

1. CRIMINAL LAW. *Statute for protection of miners against false weights and measures construed.*

   Conviction for violation of the statute making it unlawful for "any weighman, agent, or check-measurer, whether employed by operators or miners, knowingly or willfully [to] adopt or take more or less pounds for a bushel or ton than is now provided for by law" is supported by the evidence, where it appears that the defendant was a weighman employed by the operators of a coal-mine to weigh the coal dug by each miner as a basis for his compensation; and that, pursuant to a custom assented to by express contract by most of the miners employed, and known to and acquiesced in by all, the defendant allowed only 2,500 pounds per car-load, when its weight, in fact, exceeded that limit.  Parties may not by contract dispense with the criminal law.

   Act construed: Acts 1887, Ch. 206, Sec. 3.

2. CRIMINAL PRACTICE. *Argument of counsel.*

   It is not reversible error for counsel for the State to say in the closing argument in a criminal case "that the defendant did not open his mouth" when there was no exception taken to the language at the time, and it does not appear that it referred to defendant's failure to testify.

---

FROM ANDERSON.

---

Appeal in error from Circuit Court of Anderson County.  W. R. HICKS, J.

C. J. Sawyers, D. K. Young & Son, and Henderson & Jourolmon for Smith.

Attorney-general Pickle, J. A. Fowler, and Sam Epps Young for State.

Lea, J.    John Smith was a weighman at the Shamrock Mines for the purpose of weighing coal for the Coal Creek Mining Company, and the indictment charges that he "knowingly, willfully, and unlawfully took more pounds for a bushel and more pounds for a ton of coal than is now provided by law." He was convicted, and has appealed to this Court.

This case involves the construction of the Act of the Legislature, Ch. 206, passed and approved March 26, 1887. The purpose and object of the Act is expressed in its title, and is entitled "An Act to protect miners in the coal and mineral regions of this State." Section 1 provides "that at every coal or other mine in this State, where coal or other minerals are mined by weight or measure," the miners shall have the right to employ a check-weighman or check-measurer to be present at the weighing of coal, and makes it a misdemeanor for any person to intimidate or in any manner to interfere with him. Section 2 provides the duties of a check-weighman, and for settlement of differences between him and mine-owners or their agents. The third section, and the one under which Smith was indicted, is as follows:

"That should any weighman, agent, or check-measurer, whether employed by operators or miners, knowingly or willfully adopt or take more or less pounds for a bushel or ton than is now provided for by law, or willfully neglect the balancing or examining of the scales or cars, or knowingly or willfully weigh coal with incorrect scales, he shall be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail for not less than three months."

The proof shows that Smith was a weighman appointed by the owners of the mines; that the cars, as they came out of the mines, were run upon the scales, and if they were under 2,500 pounds they were weighed, if over that amount they were not weighed, but sent forward and dumped into the cars upon the railroad track, and the person digging the coal is credited with only 2,500 pounds. If the coal weighed, say 1,960 pounds, the miner is given credit for 2,000 pounds; if 1,940 pounds, he is given credit for 1,900 pounds. The witnesses proved that there were a great many cars weighing over 2,500 pounds—some as much as probably 3,000 pounds; that as soon as the beam of the scales "kicked up," to use the language of the witness, the car was not weighed, but run off the scales; if the beam did not "kick up," then it was weighed.

Upon motion of defendants and upon order of the Court, the State elected to rely upon the failure to correctly weigh the car of one Lumpkins.

37—6 P

The proof showed that a car-load of coal was mined by him and sent out, and, being drawn up on the scales, it appearing from the action of the beam of the scales that there was more than 2,500 pounds thereon, it was not weighed, and he was given credit for 2,500 pounds only. Lumpkins was digging coal at the rate of fifty cents per ton.

It is insisted for defendant that there was a contract, entered into in 1888, between the miners and the Coal Creek Mining Company, which is exhibited in the record. In that contract, after stating the price per pound to be paid for mining coal, and stating how the coal shall be loaded so as to be free from any fine coal, dirt, slate, etc., it proceeds: "The standard and quality of coal above mentioned to remain the same as that now established, and to be weighed in the same manner." It is proved by the defense that this manner of weighing was in force when the contract was signed, and had been for a number of years previously; and while Lumpkins did not sign the contract, yet he must have known the manner of weighing, though there was no positive evidence of his knowledge.

It is further insisted that the miners may agree that if a car contains over 2,500 pounds it shall not be weighed; that they may give away their coal if they wish, and therefore the defendant is not guilty.

In answer to these propositions it is sufficient

to say that the statute provides for the weighing of the coal at every coal-mine in this State. The miners are within the mountain or beneath the surface, and they have the right to know what amount of coal they have mined during the day; and especially is this so where the miners are to be paid by the bushel or ton, as in the case of Lumpkins. After the coal is weighed and the true amount is ascertained, if the miners desire to give away a portion . or all to the mine-owners, there is no law to prevent; but it is sufficient to say that Lumpkins made no such agreement.

. The evidence sustains the verdict. But it is insisted there is error in this: " The counsel for the State, in closing the case, in his argument stated to the jury that the defendant did not open his mouth, which argument was improper and contrary to law, and the defendant excepts." It does not appear that the reference was to defendant's failure to testify, or that exception was taken at the time or the action of the Court invoked.

There is no error in the judgment, and it will be affirmed, and the defendant will pay the cost.

We agree to the conclusion in this case because it does not appear that Lumpkins ever agreed to the system of weighing and paying in force by this company. H. H. LURTON.

TURNEY, Ch. J.