## Ferguson v. Moore.

### (*Nashville.*    February 6,    1897.)

1. EVIDENCE.    *Of plaintiff's church membership admissible.*

    Evidence that plaintiff, in an action for seduction under promise of marriage, had been, for several years, a member of the church, is admissible on her standing and reputation.    (*Post, p. 345.*)

2. SAME.    *Exclusion of, as to matters not in issue.*

    It is not competent to inquire of the plaintiff, in an action for seduction under promise of marriage, if she had been furnished a written statement by her attorney to memorize in regard to what she would swear about an abortion and birth of a child, when the pleadings present no such issue, and she had already answered generally that she had not seen or been furnished any statement.    (*Post, p. 345.*)

3. SAME.    *Same.*

    It is not competent to inquire of the plaintiff in an action for seduction under promise of marriage, if she did not tell defendant she intended to kill the child, and that he dissuaded her, when such fact is not put in issue by the pleadings.    (*Post, p. 345.*)

4. SAME.    *Questions not susceptible of intelligible answers.*

    A question that is asked in such a general way that no intelligible answer can be given is properly excluded.    (*Post, pp. 345, 346.*)

5. SEDUCTION.    *Charge defining seduction.*

    The statement in the Court's charge in a seduction case, that it is "not indispensable that the man use seductive arts or promises, but any act or promise or deception of the man, by which he overcomes the scruples of the woman, and induces her to have sexual intercourse with him, would constitute the offense," does not constitute reversible error, where it is immediately followed by the qualification "but if the woman, without be-

Ferguson *v.* Moore.

ing deceived, and without any false promises, deception, or artifice, voluntarily submits to the connection, the law affords her no remedy, and she cannot recover." (*Post, p. 346.*)

6. CHARGE OF COURT. *That jury are judges of the law incorrect.*

An instruction that the jury are the judges of the law, as delivered to them by the Court, is misleading in a civil action, as the jury must take the law as given by the Court. (*Post, pp. 346, 347.*)

7. STATUTE OF LIMITATIONS. *Bars action for seduction, when.*

The statute of limitations does not begin to run against the right to maintain an action for seduction under promise of marriage, so long as the man, by continuous acts, promises, and artifices, keeps up the illicit intercourse, as seduction is in such case a continuous act. (*Post, p. 347.*)

Case cited and approved: Davis *v.* Young, 90 Tenn., 303.

8. VERDICT. *Not gambling, when.*

A new trial will not be granted because the jury took an average of the several judgments as a tentative mode of arriving at a verdict, where the result was not satisfactory, and was abandoned, and the verdict was subsequently rendered for only half the amount of the average. (*Post, pp. 347, 348.*)

9. WITNESS. *Corroboration.*

It is not error for the Court to refuse to instruct the jury that the testimony of the plaintiff in an action for seduction under promise of marriage, could not be believed if she had consented to an abortion without the corroboration essential in the case of an accomplice. (*Post, p. 348.*)

10. DAMAGES. *For seduction.*

The jury on a trial for seduction under promise of marriage, may look to any indignity offered plaintiff during the trial, or any imputation against her character, or impeaching her virtue, if untrue and wantonly made, as an element of damage. (*Post, p. 348.*)

Cases cited and approved: Williams *v.* Norwood, 2 Yer., 336.

11. SAME. *Special, not recoverable, when.*

Damages cannot be recovered in an action for seduction under promise of marriage, for abortion and attendant indignities, unless special damages therefor are claimed in the pleadings. (*Post, pp. 348–350.*)

12. SAME. *Erroneous charge as to vindictive.*

An instruction that it is the "duty" of the jury to render vindictive damages against defendant in an action for seduction under promise of marriage, if they find him guilty, is erroneous, as the giving of such damages is within the discretion of the jury. (*Post, pp. 349, 350.*)

13. ARGUMENT OF COUNSEL. *Not cause for reversal, when.*

A judgment against defendant in an action for seduction under promise of marriage, will not be reversed because plaintiff's counsel, in his closing argument, applied harsh epithets to defendant, where no objection was made on the trial. (*Post, p. 350.*)

14. SAME. *Shedding tears.*

A judgment against defendant in an action for seduction under promise of marriage, will not be reversed because plaintiff's counsel in his closing argument shed tears in the midst of an eloquent and impassioned appeal to the jury. (*Post, pp. 350–352.*)

---

FROM LINCOLN.

---

Appeal in error from Circuit Court of Lincoln County. DAN WILLIAMS, Sp. J.

JO G. CARRIGAN, BRIGHT & WOODARD, and HIGGINS & SON for Ferguson.

HOLMAN & CARTER for Moore.

WILKES, J. This is an action for damages. The declaration has two counts—one for breach of contract to marry, and the second for seduction accomplished by reason of such contract. The cause

Ferguson *v.* Moore.

was heard before a Court and a jury of Lincoln County, and a verdict for $2,000 was rendered upon the first count, and of $12,700 upon the second, and for the aggregate sum of $14,700 judgment was rendered for plaintiff, and defendant has appealed and assigned errors.

It is assigned as error that the Court permitted plaintiff, over the defendant's objection, to prove that she was a member of the church, and had been for nine years. In this there was no error. It was a circumstance bearing upon the standing and reputation of plaintiff, and was entirely competent.

Plaintiff was asked if she was not furnished with a written statement by her attorney to memorize in regard to what she would swear about an abortion and the birth of a child at Chattanooga. The Court sustained an objection to the question. In this we think there was no error. It was not a proper question to ask. She had already testified that no one wrote out a statement for her to memorize or swear to and she had seen no such statement.

Plaintiff was asked if she did not tell defendant that she intended to kill the child, and that he told her not to do so. This was objected to by plaintiff and objection sustained, and this is assigned as error. This was not material to the issues involved. Moreover, the question was answered in the negative, and this is not error.

Dr. Hall was asked if a child prematurely born would cry. The question was objected to and the

objection sustained, and this is assigned as error. The question is asked in the most general way, without specifying the age of the child. It does not appear what the answer would have been, and it is evident that no intelligent answer could have been given to such question, asked in such general way.

It is objected that the Court erred in saying to the jury that, in order to constitute seduction, it was not indispensable that the man use seductive arts or promises, but any act or promise or deception of the man, by which he overcomes the scruples of the woman, and induces her to have unlawful sexual intercourse with him, would constitute the offense.

In immediate connection with this portion of the charge complained of, the Court added : " But if the woman, without being deceived, and without any false promises, deception or artifice, voluntarily submits to the connection, the law affords her no remedy, and she cannot recover." It will be borne in mind that the seduction was charged to have been accomplished under promises of marriage. This, taken altogether, is not erroneous, and is a plain, simple statement of the law that any jury could understand and not misconstrue.

The trial Judge said to the Jury : " You are the exclusive judges of the facts of the case, and you are the judges of the law as delivered to you by the Court." This is an unhappy expression, and the jury may have been misled into believing that in some way and to some extent they were judges of

the law. Evidently the Court intended to say that the jury must take the law as given by the Court. The jury may, however, have put a different construction upon it. In a civil case the jury are, in no sense, the judges of the law, but they take it as given by the Court.

It is assigned that the Circuit Judge was in error in charging that seduction was a continuous act, and if by several and continuous acts, promises, and artifices, the defendant kept up his illicit intercourse until September, 1894, and the action was brought in February, 1895, then the action would not be barred by the statute of limitations. It is admitted that this is in accord with the holding of this Court in *Davis* v. *Young*, 6 Pickle, 303, but it is insisted that case should be overruled, or at least not extended to cases when the suit is by the seduced female instead of the father, as in that case. We have no disposition to overrule or limit the case in its application as suggested.

It is assigned as error that the verdict was a gambling verdict as to the first count. We do not so read the record, but the testimony of the jurors given in the record show to the contrary, that while they took an average of their several judgments, it was only a tentative mode of arriving at a verdict, and was not satisfactory to anyone, and was abandoned, and verdict was rendered for only half the amount of the average. The damages under the second count do not appear to have been reached

by any mode but that recognized by law—that is, by conference and agreement among the jurors.

The Court was requested to charge the jury that if plaintiff consented to an abortion she made herself thereby an accomplice, and they could not believe the testimony unless it was corroborated. The Court declined to so charge, upon the ground that the rule had no application to the case, but would only apply in case of an action or prosecution for the abortion. In this we think the trial Judge was not in error. We are of opinion, however, that it was error to allow any evidence as to the abortion, for the reasons hereafter stated. The trial Judge told the jury that they might look to any indignities offered plaintiff during the trial, any imputation against her character, or impeaching her virtue, if any were made, and were untrue, as an element of damage. It is objected that this would not be so unless such charge and insinuations were wantonly and uselessly made. In *Williams* v. *Norwood*, 2 Yer., 336, it was held that if such charges were proven true they would go in mitigation of damages, and if untrue they must be held to have been wantonly made.

The tenth assignment of error presents the question that plaintiff cannot have damages for an abortion attempted at Chattanooga, nor the indignities suffered there, because they are special damages, not the necessary result of the breach of promise, nor of the seduction, and not set out or claimed in the declaration. The contention is, that special damages,

not the necessary result of the act complained of, must be alleged before they can be proven; that abortion, and indignities connected with it, were independent grievances, not the necessary result of either the breach of promise or seduction, and were not set out in the declaration and no claim made on that account; and that it also appeared that a suit was pending at Chattanooga for the alleged abortion.

Likewise, the second error assigned is that plaintiff was allowed, over defendant's objection, to prove that defendant proposed to her to submit to an abortion, and went with her to Chattanooga for that purpose, and that she suffered from the operation and exposure while at Chattanooga.

This matter of abortion, and the suffering and indignity consequent upon it, not being alleged in the declaration, and no special damages being claimed on that account, evidence in regard to it was incompetent, especially as a separate suit was pending at Chattanooga against defendant and others for this act of abortion.

The Court said to the jury: "You may give what is called vindictive damages to punish the defendant, if guilty, and deter others from doing likewise, and it is not only your right but your duty to do so." This was error. The giving of vindictive damages is a matter of discretion with the jury, and they should not be told that it is their duty to give them. No vindictive or punitive damages were

claimed in the declaration, and the trial Judge, in stating a hypothetical case which would entitle plaintiff to vindictive damages, lays special stress upon the attempted abortion, and the pain, suffering, and indignity caused thereby, upon her trip to Chattanooga, which was not referred to in the declaration, and which we have held was therefore incompetent, and this error is well assigned. It is true that in an action for breach of promise, seduction may be shown, though not alleged, but abortion is a separate, distinct grievance and injury, not the necessary or inevitable result of either the breach of promise or seduction, and should have been alleged and damages claimed therefor, if desired.

It is further assigned as error that plaintiff's counsel, in his closing argument, called defendant hard names, such as villain, scoundrel, fiend, hellhound, etc., which, it is alleged, was calculated to prejudice defendant before the jury. It must be admitted these are rather harsh terms, and other language could have been used no doubt equally as descriptive and not so vituperative, but it does not appear that defendant asked the Court to interpose, and we cannot put the trial Judge in error under these circumstances. It is true the trial Judge, in his discretion, might have checked the counsel on his own motion, but inasmuch as defendant and his counsel did not object, the Court did not probably feel called upon to act. It is not reversible error.

It is next assigned as error that counsel for

plaintiff, in his closing argument, in the midst of a very eloquent and impassioned appeal to the jury, shed tears and unduly excited the sympathies of the jury in favor of the plaintiff, and greatly prejudiced them against defendant. Bearing upon this assignment of error we have been cited to no authority, and after diligent search we have been able to find none ourselves. The conduct of counsel in presenting their cases to juries is a matter which must be left largely to the ethics of the profession and the discretion of the trial Judge. Perhaps no two counsel observe the same rules in presenting their cases to the jury. Some deal wholly in logic and argument, without embellishments of any kind. Others use rhetoric and occasional flights of fancy and imagination. Others employ only noise and gesticulation, relying upon their earnestness and vehemence instead of logic and rhetoric. Others appeal to the sympathies—it may be the passions and peculiarites— of the jurors. Others combine all these, with variations and accompaniments of different kinds. No cast iron rule can or should be laid down. Tears have always been considered legitimate arguments before a jury, and while the question has never arisen out of any such behavior in this Court, we know of no rule or jurisdiction in the Court below to check them. It would appear to be one of the natural rights of counsel, which no Court or constitution could take away. It is certainly, if no more, a matter of the highest personal privilege. Indeed,

if counsel has them at command, it may be seriously questioned whether it is not his professional duty to shed them whenever proper occasion arises, and the trial Judge would not feel constrained to interfere unless they were indulged in to such excess as to impede or delay the business of the Court. This must be left largely to the discretion of the trial Judge, who has all the counsel and parties before him, and can see their demeanor, as well as the demeanor of the jury. In this case the trial Judge was not asked to check the tears, and it was, we think, an eminently proper occasion for their use, and we cannot reverse for this. But, for the other errors indicated, the judgment must be reversed and the cause remanded for a new trial. Plaintiff will pay the costs of the appeal.