STATE OF TENNESSEE ex rel. ROBERT RIVERA,
Plaintiff in Error,

*v.*

C. MURRAY HENDERSON, Warden Tennessee
State Penitentiary, Defendant in Error.

410 S.W. 2d 726

(*Nashville,* December Term, 1966.)

Opinion filed January 12, 1967.

PAUL WELKER, Clarksville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, PAUL E. JENNINGS, Assistant Attorney General, Nashville, for defendant in error. W. B. LOCKERT, JR., District Attorney General, Ashland City, represented the State in the trial court.

Mr. Justice Dyer delivered the opinion of the Court.

This is an appeal by Robert Rivera, now confined in the Tennessee State Penitentiary at Nashville, from the denial of a habeas corpus petition heard in the Circuit Court of Stewart County.

On 12 July 1957 Rivera, along with co-defendants was convicted of two counts of armed robbery receiving a sentence of fifteen years under each count with said sentences to run consecutively. These two cases are docket numbers 143 and 144. On 30 January 1958 Rivera, along with co-defendants, was convicted of armed robbery, receiving a sentence of ten years. This last case is docket number 146 and it runs consecutively to the sentences in 143 and 144 making a total time of forty years.

There is filed in the record a letter from C. Murray Henderson, Warden of the Tennessee State Penitentiary at Nashville. Under this letter it is apparent Rivera has served the ten year sentence imposed under docket number 146. This leaves at issue only the sentences imposed under docket numbers 143 and 144.

Upon arrest Rivera, along with co-defendants, was given a preliminary hearing before W. H. Keel, a Justice of the Peace in Stewart County. Upon indictment to these charges defendant, along with co-defendants, went to trial on a plea of not guilty. The State called W. H. Keel

as a witness who upon direct examination testified as follows:

Q. Now, Squire Keel, before the jury retired, you had testified, and I believe for it to be certain, this may be a little repetition. I would like for you, sir, now so that there can't be any misunderstandings and quibblings about the matter, just state to the Court and jury what did happen after the trial was called? Just go in it fully about all of the occurrences, what occurred?

A. I asked the defendants if they had counsel or somebody to represent them, and they said they didn't have. I asked them if they wanted one, and I told them that they were entitled to counsel and would give them a chance to get them a lawyer if they wanted one. If they wanted one.

And so I later tried to appoint a lawyer for them. Tried to get them a lawyer.

And had Bill Lewis, called Bill Lewis in. He didn't accept it. That is, he said he couldn't accept it on—

THE COURT (interposing) You need not say why he didn't. He didn't accept?

THE WITNESS: He didn't accept. I tried to get hold of Ira Atkins and couldn't locate him. Anyway—

BY MR. W. D. HOWELL:

Q. (continuing) That is the legislature in session at that time?

A. At that time I think so.

Q. Was Mr. Atkins a member of the legislature?

A. I think so.

Q. Go ahead.

A. So at that time, Moore asked if he could represent, could act as representative for all of them, or counsel for all of them.

And so I asked them if that was satisfactory and they said yes.

And so he went ahead and acted as a spokesman for all of them.

Q. Just there, did each one of them give his assent to Mr. Moore acting for them?

A. Yes.

Q. Now, of course, you were asked about Mr. Atkins being a member of the legislature, it hadn't convened at that time, but was he away? Was he away at that time?

A. I understood that he was.

Q. Not available to say the least of it?

A. That is right, not available.

Q. I believe you have stated that each one agreed or assented that Mr. Moore speak for them?

A. That is right.

EXAMINATION BY THE COURT:

Q. Just one question. Before you go, I want to ask him one question if I may. Before they spoke, Squire Keel, did you advise them that what they said, that they didn't have to make a statement and that what they said would be held against them? Did you advise them of that?

A. After I read the charge to them, I asked each one of them if they had any statement to make, and told them that they didn't have to make a statement unless they wanted to and it would be held against them.

THE COURT: All right, sir.

BY MR. W. D. HOWELL:

Q. (continuing) Now, under those circumstances, I am not asking you what they did, but under those circumstances did each one of them make a statement to you about their innocence or guilt?

A. They did.

Q. As they were called up?

A. Yes, they pleaded guilty to the charge.

MR. J. ALFRED SMITH: If Your Honor please, we object to that:

THE COURT: I am going to overrule your objection.

MR. J. ALFRED SMITH: Note an exception.

We are faced with the question of whether, is it error requiring reversal, where the State is allowed to prove in the trial under an indictment or presentment on plea of not guilty, that defendant did in fact plead guilty to these charges at the preliminary hearing. This same issue, though under different circumstances, arose in *Brooks v. State,* 187 Tenn. 67, 213 S.W.2d 7 (1948) where it was held to be error for the State to ask the defendant on cross examination "if he did not plead guilty to the charge." This question had reference to a plea of guilty on arraignment which was later changed to not guilty. In the *Brooks* case Mr. Justice Burnett (now Chief Justice)

in giving the logic and reason for so holding quoted from *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 as follows:

A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. (Citing authority.) But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilty or innocence. (Citing authority.) The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. (Citing authority.)

The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. (Citing authority.) The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea con-

clusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And, if admissible at all, such plea inevitably must be so considered. As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guility.' " 187 Tenn. 72, 213 S.W.2d 9

We agree and so hold to allow the State to prove Rivera, on trial before a jury on a plea of not guilty, had in fact plead guilty to the charges at the preliminary hearing was error requiring a reversal of the judgments against him; and whether Rivera, at the preliminary hearing, waived counsel or if he had counsel would not affect this holding.

The judgments against Robert Rivera, under docket numbers 144 and 145 of the Circuit Court of Stewart County, are reversed and set aside. The petition for writ of habeas corpus is granted. Robert Rivera is remanded to the custody of the Sheriff of Stewart County where he may be retried on these charges.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.