# ROBERT RIVERA, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. March 31, 1969.

Certiorari Denied by Supreme Court Aug. 4, 1969.

Paul D. Welker, Clarksville, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tennessee, Robert H. Roberts, Asst. Atty. Gen., Nashville, W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, for defendant in error.

## OPINION

OLIVER, Judge.

Robert Rivera, the plaintiff in error and defendant

below, indigent and represented by court-appointed counsel, after a change of venue from Stewart County, was convicted in the Humboldt Law Court of Gibson County, by the same jury and at the same time, upon two indictments charging separate armed robberies; for the robbery of H. O. Wallace the jury fixed the defendant's punishment at imprisonment in the penitentiary for thirty years, and for the robbery of Corbitt Wilkinson his punishment was assessed at ten years in the penitentiary; the court entered judgment accordingly in each case upon the verdict of the jury, and ordered that the ten-year sentence be served consecutively to the thirty-year sentence. His motion for a new trial being over-ruled, the defendant was granted and has perfected an appeal in the nature of a writ of error to this Court.

At gunpoint the defendant and others robbed Corbitt Wilkinson, who was night clerk in Mr. Wallace's restaurant and motel, and then went upstairs to the Wallace apartment and robbed him.

The defendant's previous convictions on the same indictments in Stewart County, in which he was sentenced to fifteen years in the penitentiary in each case which were ordered to be served consecutively, were reversed and remanded for a new trial by the Supreme Court upon appeal from the trial court's dismissal of his petition for the writ of habeas corpus. State ex rel. Rivera v. Henderson, 219 Tenn. 452, 410 S.W.2d 726 (Jan. 12, 1967).

■■ The defendant does not question the sufficiency of the evidence to sustain the verdict of the jury. His first and eighth Assignments of Error raise the ques-

tion that by being put to trial a second time upon the same indictments he was twice put in jeopardy for the same offenses in violation of Article I, Section 10 of the Constitution of Tennessee. He bases this contention upon the theory that in his habeas corpus petition referred to above, he only asked to be released from imprisonment and did not ask for a new trial, and that, therefore, he was constitutionally immune from retrial. The fallacy of this position is immediately apparent. In the first place, it is fundamental that a defendant is not placed in jeopardy in a void criminal trial. The defendant's first trial and convictions were set aside as null and void by the Supreme Court in granting his above-mentioned habeas corpus petition. In Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150, the Court said: " 'Where the judgment on the first trial was a nullity the accused cannot plead former jeopardy in bar of the second trial.' State ex rel. Underwood v. Brown, 193 Tenn. 113, 122, 244 S.W.2d 168, 172."

Moreover, in State ex rel. Austin v. Johnson, 218 Tenn. 433, 404 S.W.2d 244, speaking to the exact contention here made by the defendant, the Court said:

"When the trial court sustained the petition for habeas corpus in the first of these cases the man was then turned loose and when there was a subsequent indictment and conviction he cannot assert the defense of this former conviction. We have many decisions that agree under both Federal and State Constitutions when the accused, himself, procures a judgment to be set aside upon his own initiative and he voluntarily accepts the result, then he cannot by his own act avoid

the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy. Davis v. State, 199 Tenn. 51, 282 S.W.2d 357, and cases there cited. In the Davis case we said this:

'* * * a defendant, who, upon his own motion, extricates himself from jeopardy will not be permitted to take advantage in a subsequent trial of the court's action in the removal of the jeopardy from him.'

"Many authorities are there cited, including Etter v. State, supra, and others. This line of reasoning has been followed by the Supreme Court of the United States so far as we know, or can find, down through the history of their cases, such as Murphy v. Com. of Mass., 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711; Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412, and many others.

"Thus it is, as we see it, regardless of what the basis was in setting aside these first judgments on the petition for habeas corpus what we said in Etter v. State, supra, is equally applicable here, when we said:

'How can the accused say he has been injured, that any injustice has been done? We frankly cannot see how. At the succeeding term he clearly had all rights that he originally had in the selection of a new jury. He was not prejudiced by the evidence of the prosecution which had been introduced. The fact is he should be materially benefited. Then too, we know that ordinarily the longer a trial of the kind is postponed, the better for the accused.'"

■ As a part of this double jeopardy theory, the

defendant also says that the total sentence for the two offenses on the first trial amounted to thirty years for the two cases combined, and that the sentences imposed in the case at bar totaled forty years for the two cases. What we have said above with respect to the defendant's claim of double jeopardy fully demonstrates that his complaint about receiving a greater sentence in this second trial than in the first is untenable. In Murphy v. State, 221 Tenn. 351, 426 S.W.2d 509, the Court said in rejecting the same contention:

> "The defendant further argues in this assignment that it is a violation of due process under the 14th Amendment of the Federal Constitution to impose a harsher penalty on retrial than at the original trial. Here, the defendant received a sentence of 20 years at his original trial and 50 years upon retrial. This Court considered a similar contention involving double jeopardy in State ex rel. Austin v. Johnson (1966) 218 Tenn. 433, 404 S.W.2d 244, where this Court said:
>
>> '(W)hen the accused, himself, procures a judgment to be set aside upon his own initiative and he voluntarily accepts the result, then he cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy.'
>
> "Similarly, if the defendant seeks a new trial, he must be prepared to face a new court and a new jury without limitations being placed on their decision."

In his second Assignment of Error the defendant asserts that he was denied the right to a speedy trial in violation of Article I, Section 9 of the Constitution of Tennessee, T.C.A. § 40-2001, and the Sixth Amendment

of the United States Constitution. His first conviction was on July 12, 1957. The second trial, now before us, was on April 25, 1967. He now contends under this Assignment that being tried again for the same offense after nearly ten years was prejudicial to him as some of the material witnesses important to his defense have since become unavailable. The robberies for which the defendant was tried and convicted were committed on the 23rd day of December, 1956.

In Stubbs v. State, supra, the crimes of which Stubbs was convicted were committed on June 11, 1954; he was convicted July 14, 1954 and did not appeal; he remained in the penitentiary until his conviction was set aside in a habeas corpus proceeding in the Federal Court and he was remanded for further prosecution and was thereupon brought to trial the second time, more than ten years after his crime was committed. He insisted that he had been denied a speedy trial. The Court said:

"The fact that this man was not tried at this second trial for more than ten years after this crime was committed is no violation of his constitutional right for a speedy public trial. He was tried shortly after committing this crime the first time, but no appeal was made. He was sentenced to the penitentiary where he stayed until released by order of the Federal Court and the judgment in this first trial held void. The cause remained without disposition and the indictments remained pending after the judgment had been voided by the proceedings initiated by the plaintiff in error on his petition for habeas corpus."

We cannot agree with the insistence advanced

by the defendant in his third Assignment of Error, that he was prejudiced by the action of the trial court in overruling his motion, made orally before selection of the jury, to dismiss the entire panel of jurors because some of them had seen him brought into the courthouse and the courtroom in handcuffs. This record shows that the defendant's handcuffs were removed after he was brought into the courtroom. It would not have been reversible error if he had remained handcuffed during the trial. In State ex rel, Hall v. Meadows, 215 Tenn. 668, 389 S.W.2d 256, the Court said upon this subject:

"Whether a prisoner should be shackled or handcuffed during a criminal prosecution must be left to the sound discretion of the trial judge and unless that discretion is abused, it will not be disturbed on appeal. Matthews v. State, 77 Tenn. 128 (1882); Poe v. State, 78 Tenn. 673, 677 (1882).

"In the Matthews case it was said a prisoner

' * * * should not, during his trial, be manacled or handcuffed; but should be left free from shackles, unless some such restraint should be necessary to prevent escape.' 77 Tenn. at 130.

"The record shows that this petitioner had a record of prior escapes from confinement."

The Supreme Court of Massachusetts considered the same question in Comm. v. Chase, 350 Mass. 738, 217 N.E.2d 195, cert. den. 385 U.S. 906, 87 S.Ct. 222, 17 L.Ed.2d 137:

"The defendant contends that the judge abused his discretion in ordering that he be manacled during the

trial. While it is desirable, where possible, to avoid the shackling of a defendant during his trial (see Commonwealth v. Agiasottelis, 336 Mass. 12, 16, 142 N.E.2d 386), a judge's refusal to order the removal of the shackles, where there exists any reasonable basis for anticipating that a prisoner may attempt to escape, will not be overruled. Commonwealth v. Millen, 289 Mass. 441, 477-478, 194 N.E. 463; Commonwealth v. Agiasottelis, 336 Mass. 12, 16, 142 N.E.2d 386. Here, it appeared that the defendant had attempted to escape on two prior occasions, and this fact was brought to the attention of the judge. This, taken together with the serious nature of the crime for which the defendant was being tried, was sufficient to justify the action of the judge."

The record in this case shows that, by the defendant's own admission, he was an escapee from a Texas jail at the time of the robberies here in question; and that when he was apprehended by a highway patrolman shortly after these crimes were committed, the defendant shot the patrolman, left him for dead and escaped. Under those circumstances, the officers having custody of the defendant were fully justified in taking him in handcuffs to the courtroom. In addition, the record does not show that any juror selected to try this case saw the defendant while he was handcuffed.

■ The defendant's fourth, fifth, sixth, and seventh Assignments of Error complain about the admission of parts of the testimony of various prosecution witnesses. As indicated at the outset, the defendant has not filed any Assignment of Error here challenging the sufficiency of the evidence to support the verdict of the jury.

He raised no such question in his motion for a new trial. He did not say there and is not insisting here that the evidence preponderates against the verdict of the jury and in favor of his innocence. There is, consequently, no such issue in this case. Having assumed that attitude toward the proof, raising no protest that the evidence does not demonstrate his guilt and justify his conviction, the defendant is in no position to single out and attack isolated portions of prosecution testimony. However, we have examined the testimony about which he complains in these Assignments and are unable to perceive any prejudicial error in its admission.

■ The ninth Assignment of Error complains that in his argument to the jury the District Attorney General improperly addressed jurors by name and directed argument to them individually. In Manning v. State, 195 Tenn. 94, 257 S.W.2d 6, 45 A.L.R.2d 299, in an opinion prepared for the Court by our present Chief Justice, it is said:

> "Of course it is the duty of the District Attorney General to prosecute all offenders with utmost vigor but at the same time Attorney Generals should not be intemperate in the language they use in an effort to try to influence a jury's decision. The District Attorney General is a quasi judicial officer, representing the State of Tennessee and in doing so he is presumed to act impartially in the interest of justice.

> "This Court in Watkins v. State, 140 Tenn. 1, 203 S.W. 344, 345, said:

>> 'A verdict in a criminal case is not to be striven for by him who represents the state as a need for his

forensic or histrionic ability. The vindication of justice, not of advocacy, is the true concern. Still less is a verdict to be sought under conditions which may not untruly be said to take something of the color of jury hectoring.' "

However, although the argument complained of is in the Bill of Exceptions, it affirmatively appears that there was no defense objection or exception thereto at the time. In Staggs v. State, 210 Tenn. 175, 357 S.W.2d 52, our Supreme Court said:

"In the case of Turner v. State, 188 Tenn. 312, at page 324, 219 S.W.2d 188, the Court quoted with approval the following:

' "It is thoroughly settled, under our practice, that objectionable argument or improper remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. Smith v. State, 90 Tenn. 575, 18 S.W. 248; King v. State, 91 Tenn. 617, 20 S.W. 169; Morgan v. Duffey, 94 Tenn. 686, 30 S.W. 735; Ferguson v. Moore, 98 Tenn. 342, 39 S.W. 341." Sherman v. State, 125 Tenn. 19, 47, 140 S.W. 209, 216.' "

■ The defendant's final Assignment of Error is that the trial court erred in not excusing juror Christie because he had formed an opinion from newspaper articles about the case. When defense counsel asked this juror about that matter on voir dire examination, "* * * do you feel like that as a result of that you might be prejudiced?", this prospective juror replied, "I think I have formed an opinion but I could listen to the evidence

today and overcome it." Defense counsel then asked, "You say that you have probably formed an opinion but you think you could listen to the evidence and overcome it?", to which he replied, "Yes, I'd try to." The court then asked this man whether he could listen to the evidence and the court's charge and base his verdict on that, without being influenced by any newspaper article he had read or anything he might have heard, and he replied, "Yes, sir, I think so." Later the court again asked him if he would cast aside everything he had read or heard and try the case on the evidence, and he answered, "Yes, sir." Defense counsel then expressly accepted Mr. Christie as a juror.

In Dupes v. State, 209 Tenn. 506, 354 S.W.2d 453, the Court reiterated the settled law on this subject:

"* * * The fact that a prospective juror has read about a case in a newspaper or heard some person mention it, is not sufficient to disqualify him if he is otherwise qualified and if he states on oath that, notwithstanding what he read or heard, he believes he can give the defendant a fair and impartial trial upon the law and the evidence. Manning v. State, 155 Tenn. 266, 277, 292 S.W. 451; O'Brien v. State, 205 Tenn. 405, 420-421, 326 S.W.2d 759; Smith v. State, 205 Tenn. 502, 533, 327 S.W.2d 308."

All Assignments of Error are overruled. The judgment of the trial court is affirmed.

GALBREATH, J., did not participate in this case.

WALKER, P. J., concurs.